UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation, | ) | CASE NO. 1:15 CV 2485 |
| as Receiver of Amtrust Bank, | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Paragon Mortgage Services, Inc. | ) | Memorandum of Opinion and Order |
| Defendant. | ) | |

### Introduction

This matter is before the Court upon defendant's Motion to Transfer Venue (Doc. 11). For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank brought this Complaint against defendant Paragon Mortgage Services alleging one claim for breach of contract. The Complaint alleges that AmTrust, a failed federally chartered bank which had its principal place of business in Cleveland, Ohio, and Paragon, a Colorado corporation, entered into a Master Correspondent Loan Purchase Agreement (the Agreement) in 2006. Pursuant to

the Agreement, defendant sold or transferred mortgage loans to AmTrust.  Plaintiff is the appointed receiver for AmTrust. Defendant breached the Agreement by providing incomplete, inaccurate, false, or misleading information to AmTrust regarding three mortgage loans sold or transferred to AmTrust, i.e., the Haeffner Loans.  Under the Agreement, AmTrust purchased and/or funded two loans to borrower Haeffner, secured by property in Orlando, Florida. The information contained in the Haeffner loan package, among other things, misrepresented the borrower's credit obligations.  The Haeffner Loans defaulted. Defendant refused to indemnify plaintiff for the losses relating to these loans or otherwise perform under the Agreement.

The Agreement was entered into by AmTrust and defendant in this district. The Agreement provides that the "parties hereby consent and submit themselves to the jurisdiction and venue in any State or Federal court located in the City of Cleveland, Ohio... (Doc. 11 Ex. A at 8.15) Additionally, "This Agreement shall be construed and enforced in accordance with the laws of the State of Ohio." (*Id.* 8.18)

This matter is now before the Court upon defendant's Motion to Transfer Venue.

**Discussion**

Defendant moves to transfer this action to the District of Colorado pursuant to  28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) entails a two-step process. First, defendant's proposed alternative forum must be a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). Second, the court then "considers the private interests of the parties, including their convenience and the

convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. BusinessCard Express, Inc*., 929 F.2d 1131, 1137 (6th Cir. 1991). The party seeking transfer has the burden to prove that the balance of convenience is strongly in favor of transfer. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002); *Bacik v. Peek*, 888 F.Supp.1405, 1414 (N.D. Ohio 1993). "The court is also called upon to weigh a number of other case specific factors." *Cherokee Export Co. v. Chrysler International Corp*., 142 F.3d 432 at *2 (6th Cir. Feb.2 1998). These factors include:

> the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; [and] the practical problems associated with trying the case most expeditiously and inexpensively. In short, the Court may consider any factor that may make any eventual trial easy, expeditious, and inexpensive.

*Id.*

As set forth above, the Agreement contains a forum selection clause.  The United States Supreme Court has stated:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses... and otherwise promote the interest of justice. § 1404(a). The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.

*Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 581 (2013) (internal citations and quotations omitted). The Supreme Court further stated that when the

3

agreement contains a valid forum-selection clause, a district court must change the usual § 1404(a) analysis in three ways. *Id.* First, "the plaintiff's choice of forum merits no weight" because the forum-selection clause represents plaintiff's preemptive exercise of "venue privilege." *Id.* at 581-82. Rather, the burden shifts to the plaintiff to show why the court should not transfer the case to the agreed upon forum. *Id.* at 582. Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582. When parties agree to a forum-selection clause, they waive the right to challenge the forum as inconvenient or less convenient for themselves or their witnesses. *Id.* And third, when a party bound by a forum-selection clause "flouts its contractual obligation" and files suit in a different forum, the court in the contractually selected venue should not apply the law of the transferor venue. *Id.*

As an initial matter, it is not disputed that this Complaint "might have been brought" in Colorado.  Next, the Court must decide whether *Atlantic Marine, supra,* applies so that the usual § 1404(a) analysis should be altered as discussed in that case.

Defendant argues that because the forum selection clause in the Agreement is merely permissive, and not mandatory, it is not controlling and *Atlantic Marine* is inapposite.

First, the Court finds that the clause at issue is permissive.[1] "A forum selection clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum. By contrast, a permissive forum selection clause merely authorizes jurisdiction in the specified forum, but does not require that forum to be the exclusive venue for litigation." *Braman v. The Quizno's Franchise Company,* 2008 WL 611607 (N.D.Ohio 2008) (citing *K & V Scientific Co. v.*

---

[1] Defendant asserts that the clause is permissive.  Plaintiff does not address whether the clause is permissive or mandatory.

4

*Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002)). In that case, the court determined that the parties' use of the word "exclusive" meant that the forum selection clause was "explicitly mandatory, not permissive." Here, the parties did not agree that Cleveland, Ohio was the exclusive venue and the Court finds the clause is permissive.[2] *See also Kendle v. Whig Enterprises, LLC,* 2016 WL 354876 (S.D.Ohio January 29, 2016) (The court found a forum selection clause stating that the "parties hereby consent to jurisdiction in Florida for the purposes of any litigation relating to this Agreement" to be permissive.) *Citing Hitachi Med. Sys. Am., Inc. v. Bay Harbor MRI, Inc.,* 2009 WL 2252875 (N.D.Ohio July 28, 2009) (Where the forum selection clause does not mandate a singular forum but simply states that the parties consent to the jurisdiction of courts located in a particular state, the clause is permissive.)

Second, the Court must then determine whether *Atlantic Marine* applies. The forum selection clause at issue in *Atlantic Marine* was mandatory. Some courts which have addressed the issue have found that *Atlantic Marine* does not apply where the forum selection clause is permissive and, therefore, a court performs the typical § 1404 analysis. *See FDIC v. Nova Financial and Investment Corporation*, *supra* (The court found that because the forum selection clause at issue, unlike that in *Atlantic Marine,* was permissive, *Atlantic Marine* did not apply and plaintiff did not waive its right to challenge the clause on grounds of inconvenience.), *Residential Finance Corporation v. Jacobs,* 2014 WL 1233089 (S.D.Ohio March 25, 2014) (The court determined that in contrast to the mandatory clause in *Atlantic Marine,* the one at issue was permissive and, therefore, the court weighed the § 1404(a) factors.), *Relco Locomotives v.*

---

[2] Additionally, the Court notes that in *FDIC v. Nova Financial and Investment Corporation,* 2015 WL 2195062 (N.D.Ohio May 11, 2015), Judge Wells found the same forum selection clause as the one herein to be permissive.

5

*Allrail, Inc.,* 4 Fed.Supp.3d 1073 (S.D.Iowa 2014) (The court concluded that *Atlantic Marine* "contemplated only mandatory forum selection clauses when assessing their effect on *forum non conveniens* analysis" and because the clause at issue was permissive, the court proceeded "with the traditional *forum non conveniens* analysis, and not the modified *Atlantic Marine* analysis.")*,* and *Waste Management of Louisiana v. Jefferson Parish,* 48 F.Supp.3d 894 (E.D.Louisiana 2014)("Although *Atlantic Marine* never addressed the 'permissive' versus 'mandatory' distinction, district courts across the country have generally limited the *Atlantic Marine* framework to situations where the forum selection clause is mandatory." The court recognized that some courts concluded otherwise, but found persuasive those decisions which took into consideration whether the clause was mandatory or permissive.)

Other courts have concluded that *Atlantic Marine* applies whether the clause is permissive or mandatory.  *See FDIC v. Primelending,* 2016 WL 125652 (N.D.Ohio March 31, 2016) (The court found that *"Atlantic Marine* applies to this case regardless of whether the forum selection clause is mandatory or permissive.  It is true that the forum selection clause the Supreme Court analyzed in *Atlantic Marine* was mandatory.  However, the language of the Court's discussion seems to reach *all* valid forum selection clauses, regardless of their permissiveness.")*, Enkema v. FTI Consulting, Inc.,* 2016 WL 951012 (M.D.Tenn. March 14, 2016) ("[T]he broad language of the *Atlantic Marine* Court does not indicate that there is any distinction in analysis between a mandatory clause and a permissive clause.")*,*and *United American Healthcare Corp. v. Backs*, 997 F.Supp.2d 741 (E.D.Mich 2014)(Defendants argued that *Atlantic Marine* did not apply because the clause at issue was permissive.  The court rejected the argument: "[D]efendants have cited no authority showing that this distinction is even

6

relevant in this jurisdiction, nor any authority showing that such a distinction would change this court's analysis of a § 1404 issue." However, the clause at issue in that case expressly waived any claim of improper venue or inconvenient forum.)

The Court finds that *Atlantic Marine* applies only to mandatory forum selection clauses.[3] The Supreme Court stated, "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atlantic Marine,* 134 S.Ct. at 581 (quoting *Stewart Organizatin, Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988), which also involved a mandatory forum selection clause).  By indicating "the most proper forum," the Supreme Court could only be referring to mandatory clauses as permissive clauses only authorize jurisdiction in a forum but do not require it. A mandatory clause, on the other hand, indicates that jurisdiction is proper only in the selected forum. Additionally, the Supreme Court stated in discussing the first way that the usual § 1404(a) analysis did not apply (i.e., plaintiff's choice of forum merits no weight when plaintiff is defying the clause and filing suit other than where indicated in the clause):

> But when a plaintiff agrees by contract to bring suit only in a specified forum- presumably in exchange for other binding promises by the defendant- the plaintiff has effectively exercised its 'venue privilege' before a dispute arises.  Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

---

[3] The Court also notes that *Atlantic Marine* was in a different posture than the case herein.  There, the plaintiff filed suit in a district different from the one designated in the forum selection clause. Defendant moved to transfer the case to the venue agreed upon in the parties' forum selection clause. In the present case, plaintiff filed suit in the district identified in the forum selection clause and defendant seeks to transfer to another district. This different posture renders at least the first and third *Atlantic Marine* guidelines inapplicable. As to the first, plaintiff has not "defied" the forum selection clause.  As to the third, plaintiff has not "flouted its contractual obligation and filed suit in a different forum."

*Id.* at 582.  The Supreme Court's use of the phrase "only in a specified forum" again seems to indicate application to mandatory forum selection clauses as permissive clauses do not provide that a suit may be brought "only" in a specified forum.

For these reasons, the Court concludes that *Atlantic Marine* is limited to cases involving mandatory forum selection clauses and, therefore, the usual § 1404 analysis applies. Accordingly, the Court now proceeds to consideration of the private interest factors of the parties.

The presence of a forum selection clause is a significant but not dispositive factor in deciding a transfer motion. See, e.g., *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  "District courts in the Sixth Circuit generally assign permissive forum selection clauses little weight in deciding whether to transfer venue." *Kendle v. Whig Enterprises, supra,* (quoting *Flight Sols., Inc. v. Club Air, Inc.,* 2010 WL 276094 (M.D.Tenn. Jan. 14, 2010) (collecting cases)). Additionally, while plaintiff's choice of forum is not dispositive, it is given substantial weight unless the private and public interest factors clearly point toward trial in the alternative forum. *Id.* "The 'most important' or 'prime' factor in deciding a motion to transfer is the convenience of witnesses. In considering the convenience of witnesses, the Court must focus on the substance and importance of the potential testimony as opposed to the number of witnesses." *Federal Trade Commission v. Mazzoni & Son, Inc*., 2006 WL 3716808 (N.D.Ohio Dec. 14, 2006) (citations omitted).

Defendant asserts that the District of Colorado is the most convenient venue and Ohio has no substantial relationship or connection to this case. Defendant maintains that all the key witnesses reside in Colorado. Defendant submits the affidavit of Susan Oberbillig, its president.

8

She avers as follows. Plaintiff's Complaint arises from a residential mortgage loan brokered by defendant on AmTrust's behalf.  Defendant will necessarily present witnesses who reside in Colorado including current and former Paragon employees involved in the origination of the subject loan, the borrower of the loan, the underwriter of the loan, and AmTrust's Account Executive who oversaw the originating, underwriting, funding, and transfer of the subject loan. The borrower of the residential mortgage loan at issue, Elbert Haeffner, resides in Colorado. He is a long-time employee of a Colorado based company.  Paragon did not perform the underwriting of the loan. The underwriter, Diane Gendelman, resides in Colorado.  She was responsible for verification of the borrower's income and debts (which plaintiff alleges were inaccurate). Azaela Bernier Menely, who resides in Colorado, was AmTrust's representative (Account Executive) in connection with the loan.  She was defendant's point of contact for all issues relating to the agreement and business relationship between defendant and AmTrust. She oversaw and managed all loans Paragon brokered for AmTrust, worked with Paragon to make sure the loans complied with applicable guidelines, and managed the "onboarding" and training of Paragon's loan officers and processors.  (Oberbillig aff.) Defendant states in its brief that Haeffner's employer would testify regarding Haeffner's income which is relevant to his qualifying debt-to-income ratio. Defendant also asserts that one or more Paragon employees involved in the origination of the subject loan would be witnesses as well. Compulsory process would be necessary to obtain these witnesses' testimony given their distance from Ohio.  Even if they are willing to testify, traveling to Ohio would result in a significant expense.

      Plaintiff argues that the District of Colorado is not more convenient than the Northern District of Ohio or any number of other potential venues because the properties at issue are

9

located in Florida and Arizona and potentially relevant witnesses are located throughout the country. Plaintiff submits its attorney's declaration who states the following. To the extent that former AmTrust Bank employees could offer discoverable testimony, most are likely to reside in Ohio. Plaintiff's claim is based on a credit misrepresentation due to the fact that Haeffner's loan documentation submitted by Paragon failed to disclose his 2006 purchase of another property in Scottsdale, Arizona upon which he had obtained two mortgages from Countrywide Bank. Individuals connected to Haeffner's purchase of the Scottsdale property (e.g., the escrow officer/settlement agent for the transaction) might provide relevant testimony regarding his ownership of and liens on that property. Public records indicate that Haeffner purchased the Scottsdale property from a seller named MCZ which was located in Illinois. After purchasing the Haeffner loans from Paragon, AmTrust sold them in the secondary mortgage market and the loans were purchased by Fannie Mae. Fannie Mae later demanded repurchase of the loans due to a breach of representation and warranty in the loan documentation submitted by Paragon, and AmTrust complied. Fannie Mae's underwriting consultant, Ellen M. Bratton, lives in Texas and underwriting director, Maria B. Brewster, lives in Illinois. The Fannie Mae Repurchase Notification was sent to AmTrust by Wells Fargo. The Wells Fargo Repurchase Analyst identified in the letter was an individual named Katie Peters who appears to reside in Iowa. The Orlando property upon which Haeffner obtained the loans was located in the Orlando Cay Club Resort and Academy in Orlando, Florida. Public records indicate that the former Cay Clubs Resorts and Marinas executives Barry J. Graham and Ricky Lynn Stokes are currently incarcerated in the Federal Detention Center in Miami, Florida.[4] The seller of the Orlando

---

[4]  Plaintiff states in its brief that The Orlando Cay Club Resort and Academy was a condominium complex managed by the entity called Cay Clubs Resorts and

property was a Florida limited liability company located in Clearwater, Florida. The settlement agent for Haeffner's purchase of the Orlando property was located in Orlando, Florida and its principal resides there. (Holtz aff.)  Plaintiff  asserts that the various individuals identified in connection with the Fannie Mae repurchase may provide testimony relevant to the breach of representations and warranties at issue and that the individuals identified in connection with the Orlando property may have relevant information regarding the potentially fraudulent nature of Haeffner's purchase of that property.  The settlement agent for the Orlando property may have relevant information regarding the potentially fraudulent nature of the subject transaction.  In sum, plaintiff contends, relevant witnesses are located throughout the country, including in Ohio, Arizona, Illinois, Texas, Iowa, and Florida.

Plaintiff argues that the District of Colorado is not a more convenient forum to the parties and merely shifts the inconvenience from defendant to plaintiff because witnesses are located all over the country. Plaintiff asserts that some of the purported Colorado witnesses are irrelevant such as Haeffner's employer who had nothing to do with the breach alleged in the Complaint. Plaintiff also asserts that to the extent the testimony of former AmTrust employee witnesses or other witnesses regarding the underwriting of the loans is relevant, "any number of other former AmTrust employees or underwriting agents located in Ohio or elsewhere may have relevant testimony as well." (*Id.*)

For the following reasons, the Court agrees with defendant that the private interests weigh in favor of the District of Colorado and that venue is more convenient for the parties and witnesses.

---

Marinas and the executives were sentenced for their participation in a Ponzi scheme involving the sale of vacation rental units.

Defendant's principal place of business is in Denver, Colorado. AmTrust no longer exists as an Ohio financial institution and plaintiff is a corporation created by federal statute which has no overriding connection to any state in particular and no greater connection to Ohio than to Colorado.

Defendant has demonstrated that witnesses to the subject transaction reside in Colorado, including the borrower, the underwriter of the loan, and AmTrust's Account Executive who oversaw the originating, underwriting, funding, and transfer of the loan. Plaintiff asserts that these witnesses, other than Haeffner, "have no possible relevance" to this case and that "to the extent the testimony of these witnesses is even relevant, any number of AmTrust employees or underwriting agents located in Ohio or elsewhere may have relevant testimony as well." (Doc. 13 at 10) Plaintiff states in a footnote that it disputes that the conduct of former AmTrust employees is relevant but if so, "most are likely to reside within the state of Ohio." (*Id.* footnote 1) But, defendant shows that plaintiff did not disclose any former AmTrust employees in its Rule 26 disclosures. (Chandler Kelley decl.) Nor does plaintiff offer any support for its assertion that the employees "are likely" to reside in Ohio. Defendant points out that while AmTrust may have been located in Ohio, it no longer existed as of 2009. Indeed, plaintiff does not identify any witnesses who reside in Ohio.

Rather, plaintiff presents a confusing list of purported witnesses who live outside Ohio. First, plaintiff fails to demonstrate how these witnesses are relevant to its breach of contract claim. None of the events concerning Wells Fargo or Fannie Mae are alleged in the Complaint and do not appear to have a connection to it. Furthermore, as defendant points out, it appears that Wells Fargo claimed the loan was ineligible under an agreement it had with AmTrust. Defendant

12

is not a party to that agreement. Nor does the Complaint make reference to the Cay Clubs Resorts Florida property or the Ponzi scheme there. Plaintiff does not show how the individuals connected to the Florida property are relevant. Second, even if these witnesses are relevant, plaintiff attempts to show how they are scattered across the country but does not establish that Ohio would be more convenient to them. In sum, plaintiff fails to establish that the Northern District of Ohio is convenient or that the District of Colorado is inconvenient. For these reasons, the Court finds that the convenience of witnesses weighs in favor of defendant.

Plaintiff contends that the interests of justice would not be served by a transfer because the Agreement contains an Ohio choice of law provision and this Court is more familiar with Ohio state laws than a district judge in Colorado.  On balance, however, this factor is not determinative where plaintiff has not shown that it will be inconvenienced by the requested transfer.

**Conclusion**

For the foregoing reasons, defendant's Motion to Transfer Venue is granted.

IT IS SO ORDERED.


                                                  /s/ Patricia A. Gaughan
                                                  PATRICIA A. GAUGHAN
                                                  United States District Judge

Dated: 5/10/16